## Nod's Inc. v. Commonwealth

*Clarence D. Neish,* for plaintiff.
*Sandy W. Schichilone,* for defendant.

KLEIN, *J.,* February 27, 1978 — This case is before the court on the Commonwealth's preliminary objections to plaintiff's petition for the appointment of viewers. The grounds alleged in support of said preliminary objections were as follows: (1) failure to set forth a cause of action under section 502(e) of the Eminent Domain Code of June 22, 1964, P.L. (Spec. Sess.) 84, as amended, 26 P.S. §1-502; (2) failure to set forth any cause of action under the code; (3) res judicata and collateral estoppel; (4) statute of limitations; and (5) the board of viewers

lacks jurisdiction over the subject matter. For these reasons, the Commonwealth maintains that it is not liable to plaintiff under the eminent domain code. At oral argument, in support of its preliminary objections, the Commonwealth abandoned all of its grounds for objection except res judicata, and, alternatively, the applicability of section 502(e) of the eminent domain code. Before reaching the merits of these two contentions, it is essential to view the history of this case and the property involved so that it can be seen in its proper perspective.

## I. HISTORY

Plaintiff, Nod's Incorporated, owns a vacant tract of land situated in the Borough of Aliquippa, Beaver County. The land abuts the west side of Constitution Boulevard, a state highway. On May 14, 1970, the Governor approved plans to widen Constitution Boulevard from three lanes to four lanes and construct a three foot high medial barrier along the center line. During the construction, the Commonwealth excavated and trenched along the toe of the slope which abuts Nod's property. The Commonwealth claimed that there was no taking (deposition of Richard A. Matisz, September 1, 1977, p. 40) and did not file a declaration of taking.

Nod's petitioned and the court appointed a board of viewers which, after hearings, filed a report awarding damages of $37,500 for interference with access and injury to surface support. The court dismissed the Commonwealth's objections to the viewers' report and the Commonwealth appealed, raising the question of interference with access. The Commonwealth Court, on appeal, reversed, and remanded the record to resolve the question of injury to surface support.

On October 3, 1975, a jury awarded Nod's a verdict of $20,000 plus detention damages for injury to surface support. The question of taking was not at issue. At trial, Nod's maintained that it became aware that the Commonwealth may have taken its property by constructing concrete headwalls and drain pipes beyond the legal right-of-way, on Nod's property.

On May 12, 1976, Nod's petitioned and the court appointed a board of viewers to ascertain the just compensation to which Nod's is entitled for the de facto taking of its land. The Commonwealth filed the instant preliminary objections seeking to set aside Nod's petition or, in the alternative, to schedule an evidentiary hearing. Pursuant thereto, this court ordered that the parties depose witnesses and submit evidence to determine whether there was a taking, and if so, how and when it occurred. After oral depositions, the Commonwealth stipulated that it did in fact construct four headwalls of various sizes and drain pipes beyond the right-of-way line and on Nod's property. (Transcript of proceedings, October 6, 1977.)

## II.  RES JUDICATA

The Commonwealth contends that plaintiff should be barred from raising the issue of the de facto taking because of the doctrine of res judicata. The principle of res judicata is that a prior judgment operates as an estoppel to a subsequent action where both actions involved the same facts and issues. In Thompson v. Karastan Rug Mills, 228 Pa. Superior Ct. 260, 323 A. 2d 341 (1974), the court set out the requirements necessary to invoke the doctrine. "To support a claim of res judicata, the party asserting this defense must show the concurrence

of four conditions; (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued." Id. at 265. See also Bearoff v. Bearoff Bros., Inc., 458 Pa. 494, 327 A. 2d 72 (1974); Stevenson v. Silverman, 417 Pa. 187, 208 A. 2d 786 (1965). The Commonwealth asserts that all four of these conditions have been met. With this contention we must disagree. There is no identity as to the cause of action.

It is generally recognized that "[i]n a condemnation proceeding the owner must recover in the one proceeding all the damages which may have resulted, or are reasonably likely to result in the future, from a proper construction and operation of the improvement." 13 P.L.E., 371, §108. No subsequent action will lie to recover items which were or might have been considered in the original proceeding: Rogers v. City of Philadelphia, 181 Pa. 243, 37 Atl. 339 (1897). The Commonwealth maintains that plaintiff knew of the taking, and therefore, should have raised that issue at the time of the initial action. Plaintiff was uncertain as to whether or not there had been a taking.

At the trial in the original action, no. 1415 of 1971, the following exchange occurred during a side bar conference:

"Mr. Bowers: If they asked for an offer of proof, we would be prepared. Are you attempting to show the Commonwealth was within their right-of-way?

"Mr. Scichilone: Yes.

"Mr. Bowers: We will submit, and have the court charge the jury, that has been stipulated. Is there any other purpose of the profile?

"Mr. Scichilone: No, not really.

"Mr. Bowers: Okay. There is no need for the witness to testify, Your Honor. That has been stipulated, all the drawings show it, and we agree with it.

"The Court: He is allowed to put the witness on. You can't try a case with no witnesses on one side—

"Mr. Bowers: Your Honor, then we withdraw the stipulation. I think it is of no matter, if that is the sole purpose under the offer.

"The Court: —that is no lawsuit.

"Mr. Bowers: It has no bearing.

"Mr. Neish: It may very well be, if this witness gets on and testifies—

"Mr. Scichilone: I will withdraw the witness.

"Mr. Bowers: On the record, so the Court understands just what Mr. Neish said, we look at those drawings, they very well might be outside the right-of-way. We feel they probably are. We have chosen not to raise that issue. We tried to put a profile—Maybe we should prove they are within the right-of-way, and you have a take. We are not raising that issue." (R-235, 236).

Furthermore, this court made it clear, during our charge to the jury, that there was no claim based on a taking (R-259). The Commonwealth believes that the above exchange makes it evident that plaintiff knew that there had been a taking. We interpret such language to mean, at most, that during the trial, plaintiff became alerted to the possibility that there may have been a taking.

Depositions were taken on September 1, 1977. Mr. Richard A. Matisz, the design engineer, and Mr. Wallace G. Johnson, assistant construction engineer, both testified that they were aware that the head walls extended beyond the legal right-of-way at the time of construction (R-15, 22,64). However,

Mr. Matisz also stated that he was not aware if the owners were notified, but he knew that the Commonwealth contended that it was within its legal right-of-way (R-38, 40). Mr. Vincent Troiani, the construction and inspection supervisor, was not even aware that the head walls were constructed beyond the legal right-of-way until the Monday before the depositions were taken (R-52). Thus, these depositions do not show that plaintiff was aware of a taking before the initial lawsuit.

The instant case is similar to Bennett v. Pennsylvania Electric Company, 24 D. & C. 2d 59 (1960). There, a public service company had acquired a right-of-way over plaintiff's land, by eminent domain, for the purpose of supplying light, heat and power to its customers. Plaintiff was awarded damages. It was then discovered that the company had leased to a corporation the right to jointly occupy the poles of an electric distribution line for which the right-of-way had been acquired. In holding such action to be an illegal use of the right-of-way and a trespass upon plaintiff's land, for which plaintiff was entitled to damages, the court said:

"We refer briefly to defendant's contention that acceptance by plaintiffs of the viewers' award is res judicata of their rights. With this we do not agree. The petition for the appointment of viewers and the order thereon . . . refer to the condemnation resolution, the Public Utility Commission application, order and certificate. At no time did the viewers consider any taking other than the right of way as limited by these documents and pleadings. *If, as the defendant contends . . . , the wires were in place at the time of the view . . . , the viewers could only have considered a taking within the authority of the resolution and certificate.* They

had no authority to award damages for an unlawful use of the right of way by defendant or its licensee. . . ." Id. at 72.

In the Bennett case, it appears that the illegal use of the right-of-way may have been occurring at the time of the original award. The instant plaintiff was not aware that a taking had occurred until at least the trial of the original claim. He should now be entitled to assert a claim for compensation.

This situation is not unlike the case where subsequent injuries occur as a consequence of construction for which compensation has already been made. In such instances, additional damages have been allowed. See Capristo v. Commonwealth, 58 D. & C. 2d 715 (1972); Cavalier Appeal, 408 Pa. 295, 183 A. 2d 547 (1962); Short v. Commonwealth, 5 Pa. Commonwealth Ct. 91, 289 A. 2d 253 (1972). We therefore hold that the present claim by plaintiff is not barred by the doctrine of res judicata.

### III. CAUSE OF ACTION UNDER SECTION 502(e) OF THE EMINENT DOMAIN CODE

Section 502(e) of the Eminent Domain Code, 26 P.S. §1-502(e), provides as follows: "If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury."

The Commonwealth contends that if plaintiff's claim is not barred, it is covered by the State Highway Law of June 1, 1945, P.L. 1242, 36 P.S. §670-417. That provision states:

"The department shall have authority to enter

upon any lands or enclosures, and cut, open, maintain, and repair such drains or ditches, inlets or outlets through the same as are necessary to carry the waters from roads, highways, or within, at the top, or base of, slope areas, constructed or improved at the expense of the Commonwealth or under its supervision. Any damages sustained by the owner or owners of land entered upon by the department for such purposes, shall be paid in the same manner as provided by this act in the construction of State highways. The determination of the amount of damage shall be in accordance with the provisions of Article III of this act." We do not find this section controlling.

To begin with, section 302 of the code makes it applicable to all condemnations. Section 903 repeals all other acts or parts of acts which are inconsistent with the provisions of the Eminent Domain Code. The code also contains a saving clause, 26 P.S. §1-901. That provision specifically states that the code does not repeal or modify section 412 of the State Highway Law, 36 P.S. §670-412. Section 412 deals with occupancy of right-of-way of public service companies. Had the drafters of the code intended section 417 of the State Highway Law to be controlling, they could easily have included that section within the saving clause. Finally, section 303 states: "It is intended by this act to provide a *complete and exclusive procedure and law to govern all condemnations* of property for public purposes and the assessment of damages therefor . . ." 26 P.S. §1-303. (Emphasis supplied.) We thus find plaintiff's claim to be properly asserted under section 502(e).

## ORDER

And now, February 27, 1978, for the reasons stated in the accompanying opinion, it is hereby ordered, adjudged and decreed that the Commonwealth's preliminary objections be dismissed. The board of reviewers is hereby directed to proceed in accordance with applicable rules of law and procedure.